## CARSON *v.* DUNHAM.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH CAROLINA.

Submitted March 28, 1887. — Decided April 25, 1887.

When a case is removed from a state court to a Circuit Court of the United States on the ground that the controversy is wholly between citizens of different states, and the adverse party moves in the Circuit Court to remand the case, denying the averments as to citizenship, the burden is on the party at whose instance the suit was removed to establish the citizenship necessary to give jurisdiction to the Circuit Court.

A petition filed in a state court, showing on its face sufficient ground for the removal of the cause to a Circuit Court of the United States, may be amended in the latter court by adding to it a fuller statement of the facts, germane to the petition, upon which the statements in it were grounded.

In order to give jurisdiction to a Circuit Court of the United States of a cause by removal from a state court, under the removal clauses of the act of March 3, 1875, c. 137, it is necessary that the construction either of the Constitution of the United States, or of some law or treaty of the United States, should be directly involved in the suit; but the jurisdiction for review of the judgments of state courts given by § 709 of the Revised Statutes extends to adverse decisions upon rights and titles claimed under commissions held or authority exercised under the United States, as well as to rights claimed under the Constitution laws or treaties of the United States.

*Provident Savings Society* v. *Ford*, 114 U. S. 635; *Dupasseur* v. *Rochereau*, 21 Wall. 130; and *Crescent City Live-Stock Co.* v. *Butchers' Union Co.*, 120 U. S. 141, distinguished.

A mortgage made in enemy's territory to a loyal citizen of the United States does not necessarily imply unlawful intercourse between the parties, contrary to the non-intercourse proclamation and act.

A petition for the removal of a cause from a state court should set out the facts on which the right is claimed; not the conclusions of law only.

THIS was an appeal from an order of a Circuit Court remanding a case to the state court from which it had been removed. The case is stated in the opinion of the court.

*Mr. Clarence A. Seward* and *Mr. James Lowndes* for appellant. *Mr. A. G. Magrath* and *Mr. H. E. Young* also filed a brief for same.

*Mr. William E. Earle* for appellee.

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

This is an appeal under § 5 of the act of March 3, 1875, c. 137, 18 Stat. 470, from an order of the Circuit Court remanding a suit which had been removed from a state court. The record shows that on the 11th of August, 1886, C. T. Dunham, the appellee, filed a bill in equity in the Court of Common Pleas of Berkeley County, South Carolina, against Caroline Carson, to foreclose a mortgage made by William McBurney

and Alfred L. Gillespie to Edmund Hyatt, which had been assigned to Dunham. Is is alleged that Mrs. Carson is in possession of the mortgaged property, and that she and the plaintiff are the only necessary parties to the suit. Service was made on Mrs. Carson by publication, for the reason, as shown by affidavit, that she did not reside in South Carolina, but in Rome, Italy. On the 9th of October, 1886, which was the day service on her was completed, she entered her appearance by counsel, and at the same time filed her petition for the removal of the suit to the Circuit Court of the United States for the District of South Carolina, on the following grounds:

"I. That all the matters therein have been already adjudged in her favor by the Circuit Court of the United States for the District of South Carolina.

"II. That the complainant is barred of his present action by a judgment of the said court in her favor on the matter in controversy.

"III. That this court is without jurisdiction because a prior suit on the like matter is pending in the aforesaid court of the United States, which, by its receiver, has possession of the subject matter of this suit.

"IV. That the bond and mortgage sued on are void under the laws of the United States.

"V. That the defendant holds title to Dean Hall plantation, the property involved in this suit and mentioned in the complaint in the above-entitled suit, under an authority exercised under the United States, to wit, under a conveyance from the United States marshal for the district of South Carolina, made under a decree of the United States Circuit Court, for the said district, all of which will more fully appear by her answer.

"The controversy in said suit is also wholly between citizens of different states, viz., between the said C. T. Dunham, who, as your petitioner is informed and avers, was, at the commencement of said suit, and now is, a citizen of the state of South Carolina, and your petitioner, who was, at the commencement of said suit, and now is, a citizen of the state of Massachusetts; or the controversy in said suit is wholly be-

tween Mary A. Hyatt, who was, at the commencement of said suit, and now is, a citizen of the state of New York, and who is the sole and only real party in interest in said suit and in said controversy, and your petitioner, who was, at the commencement of the said suit, and now is, a citizen of the state of Massachusetts, and which controversy is the only controversy in said suit; that the said Mary A. Hyatt is the real party plaintiff in said suit, and the said C. T. Dunham is but a nominal and colorable plaintiff, and that his name has been used merely for the purpose of defeating the jurisdiction of the Circuit Court of the United States for the District of South Carolina, and that said suit is, in fact, a controversy wholly between the said Mary A. Hyatt and your petitioner, notwithstanding the assignment to the said C. T. Dunham in the complaint in said suit mentioned."

The suit was entered in the Circuit Court on the 26th of October, 1886, and the next day Mrs. Carson filed in that court an answer to the bill, in which she set up title in herself to the mortgaged property by reason of a purchase at judicial sale under a decree of the Circuit Court of the United States, affirmed by this court, *McBurney* v. *Carson*, 99 U. S. 567, in a suit for the foreclosure of a mortgage belonging to her superior in lien to that in favor of Hyatt. The particulars of her title, as stated in the answer, will be found reported in *Carson* v. *Hyatt*, 118 U. S. 279, decided by this court at the last term. The claim is that Dunham is estopped by this foreclosure from denying the validity of the mortgage held by Mrs. Carson, and its priority in lien to that on which this suit was brought.

The answer also sets up as a bar to this suit a decree in the suit of *Carson* v. *Hyatt*, *supra*, after it was removed to the Circuit Court of the United States under the order of this court, dismissing the bill on the discontinuance of the complainant therein from whom Dunham claims title by assignment since the rendition of that decree.

The answer also contains these further defences:

"XVII. The defendant avers that a suit is now pending in this court wherein all the issues involved in this action are

raised; that the said suit was begun before this present suit, and that this court obtained jurisdiction thereof before any court obtained jurisdiction of this present suit, and she says that by reason of the said suit the court of Common Pleas of Berkeley County then had and now has no jurisdiction of this action.

"XVIII. When the bond and mortgage which the complainant is seeking to enforce were executed to the said Edmund Hyatt the said Edmund Hyatt was a citizen and a resident of the state of New York, a loyal state, and the obligors of the said bond, and the makers of the said mortgage, were citizens of the state of South Carolina, which was then in rebellion against the United States; and this defendant avers that the said bond and mortgage were void under the laws of the United States."

On the 11th of November Dunham filed in the Circuit Court an answer to the petition of Mrs. Carson for removal, in which he denied that he was a citizen of South Carolina, and averred that he was a citizen of the same state with her, namely, Massachusetts. The issue made by this answer was set down for trial in the Circuit Court, accompanied by an order "that on such trial the burden shall be upon the defendant, Caroline Carson, to show that the plaintiff, C. T. Dunham, is not a citizen of Massachusetts."

Upon this trial it was substantially admitted that Dunham was at the commencement of the suit a citizen of Massachusetts, and thereupon the suit was remanded. From an order to that effect this appeal was taken.

The Circuit Court did not err in holding that the burden of proof was on Mrs. Carson to show that Dunham was not a citizen of Massachusetts. As she was the actor in the removal proceeding, it rested on her to make out the jurisdiction of the Circuit Court. Dunham having denied that he was a citizen of South Carolina, as she had stated in her petition, and having claimed that he was in fact a citizen of Massachusetts, the same as herself, the affirmative was on her to prove that his claim was not true, or, in other words, that he was a citizen of another state than her own. The fact

that the suit had actually been entered in the Circuit Court did not shift the burden of proof. It was decided in *Stone* v. *South Carolina*, 117 U. S. 430, that all issues of fact made on a petition for removal must be tried in the Circuit Court. The matter stood for trial in the Circuit Court, therefore, precisely the same as it would if the law had required the petition for removal to be filed there instead of in the state court, and Mrs. Carson had been called on to prove the facts on which her right of removal rested. The evidence showed conclusively that Dunham was a citizen of the same state with Mrs. Carson, and consequently the suit was properly remanded so far as that ground of removal was concerned.

The fact, if it be a fact, that the assignment of the mortgage to Dunham was colorable only, and made for the purpose of preventing the removal, gives the Circuit Court no right to take jurisdiction. That was decided in *Provident Savings, &c., Society* v. *Ford*, 114 U. S. 635, followed and approved in *Oakley* v. *Goodnow*, 118 U. S. 43.

The important question is, therefore, whether it sufficiently appears that the suit is one "arising under the Constitution or laws of the United States." In *Gold Washing and Water Co.* v. *Keyes*, 96 U. S. 199, 203, it was decided that, "before a Circuit Court can be required to retain a cause under this jurisdiction, it must in some form appear upon the record, by a statements of facts, 'in legal and logical form, such as is required in good pleading, that the suit is one which 'really and substantially involves a dispute or controversy' as to a right which depends upon the construction or effect of the Constitution, or some law or treaty, of the United States." When this suit came into the Circuit Court from the state court, no such case had been made out. As was further said in the case just cited, "the office of pleading is to state facts, not conclusions of law   It is the duty of the court to declare the conclusions, and of the parties to state the premises." All the statements of this petition, which, for the purpose of removal, performs the office of pleading, are mere conclusions of law, not facts from which the conclusions are to be drawn. If the case had stood on the bill and petition for removal alone,

there could be no doubt of the propriety of the order to remand on this ground as well as on that of citizenship.

But after the case got into the Circuit Court, an answer was filed which did state the facts from which, it is claimed, the conclusions of law set out in the petition necessarily followed. The petition, on its face, made a case for removal by reason of the citizenship of the parties; and the suit was properly taken from the state court and entered in the Circuit Court on that ground, if not on the others. The statute made it the duty of the state court to proceed no further until its jurisdiction had in some way been restored. Had it proceeded, its judgment could have been reversed, because, on the face of the record, its jurisdiction had been taken away.

The suit was, therefore, rightfully in the Circuit Court when the record was entered there and when the answer was filed, which, for the purposes of jurisdiction, may fairly be treated as an amendment to the petition for removal, setting forth the facts from which the conclusions there stated were drawn. As an amendment, the answer was germane to the petition, and did no more than set forth in proper form what had before been imperfectly stated. To that extent, we think, it was proper to amend a petition which, on its face, showed a right to the transfer. Whether this could have been done if the petition, as presented to the state court, had not shown on its face sufficient ground of removal, we do not now decide.

Before considering further this branch of the case it is proper to notice the difference between the provisions of the act of 1875 for the removal of suits presenting Federal questions, and those in § 709 of the Revised Statutes for the review by this court of the decisions of the highest courts of the states. Under the act of 1875, for the purposes of removal, the suit must be one " arising under the Constitution or laws of the United States, or treaties made or which shall be made under their authority;" that is to say, the suit must be one in which some title, right, privilege, or immunity on which the recovery depends will be defeated by one construction of the Constitution, or a law or treaty of the United States, or sustained by a contrary construction. *Starin* v. *New York*, 115

U. S. 248, 257, and cases there cited. But under § 709 there may be a review by this court of the decisions of the highest courts of the states in suits "where any title, right, privilege, or immunity is claimed under the Constitution, or any treaty or statute of, or commission held or authority exercised under, the United States, and the decision is against the title, right, privilege, or immunity specially set up or claimed, by either party under such constitution, treaty, statute, commission, or authority." For the purposes of a removal the Constitution, or some law or treaty of the United States, must be directly involved, while for the purposes of review it will be enough if the right in question comes from a "commission held, or an authority exercised under, the United States." Cases, therefore, relating to the jurisdiction of this court for review are not necessarily controlling in reference to removals.

This distinction was pointed out and acted on in *Provident Savings, &c., Society* v. *Ford*, 114 U. S. 635, where the suit was brought in a state court of New York on a judgment in the Circuit Court of the United States for the Northern District of Ohio, and an attempt was made to remove it under the act of 1875, on the ground, among others, that "a suit on a judgment recovered in a United States court is necessarily a suit arising under the laws of the United States, as much so as if the plaintiff or defendant were a corporation of the United States;" but it was decided otherwise, (p. 642,) because a suit on such a judgment is "simply the case of an ordinary right of property sought to be enforced," unless some question is raised "distinctly involving the laws of the United States." "These considerations," it was further said, "show a wide distinction between the case of a suit merely on a judgment of a United States court and that of a suit by or against a United States corporation." The expressions in the opinions in *Dupasseur* v. *Rochereau*, 21 Wall. 130, 134, and *Crescent City Live-Stock Co.* v. *Butchers' Union*, 120 U. S. 141, 146, relied on by the counsel for the appellants, and which are thought to be in conflict with this, must be read and construed with reference to the facts of those cases, which came here from the courts of states for review under § 709 of the Revised Statutes.

What we have quoted above from *Provident Savings, &c., Society.* v. *Ford* is equally applicable to the case made on this record. The answer sets up as a defence to the suit the decree in *Hyatt* v. *Carson*, and the title acquired by the purchase under the authority of the sale in *Carson* v. *McBurney*. It is an attempt to enforce an ordinary property right, acquired under the authority of judgments and decrees in the courts of the United States, without presenting any question "distinctly involving the laws of the United States." The suit, therefore, as now presented, is not one arising under the Constitution and laws of the United States, within the meaning of that term as used in the removal act of 1875 ; but if, in deciding the case, the highest court of the state shall fail to give full effect to the authority exercised under the United States, as shown by the judgments and decrees of their courts, relied on to support the title of Mrs. Carson, its decision in that regard may be the subject of review by this court under § 709. The petition for the removal and the answer, taken together, set up and claim in her behalf a right derived from an authority exercised under the United States, but not necessarily under the laws of the United States, within the meaning of that term as used in the removal act.

What has been said in reference to the claims under the decrees in the Circuit Court is equally applicable to the allegation in the answer of the pendency of another suit on the same cause of action in the same court.

The statement in the answer that when the mortgage to Hyatt was made he was a citizen and resident of New York, and the makers of the mortgage citizens of South Carolina, a state whose people were then in rebellion against the United States, is not enough to make a suit arising under the Constitution or laws of the United States. The fact that a mortgage was made in enemy territory to a loyal citizen of the United States does not necessarily imply unlawful intercourse between the parties contrary to the proclamation of the President of the date of August 16, 1861, 12 Stat. 1262, under the authority of the act of July 13, 1861, c. 3, § 5, 12 Stat. 257 That transactions within Confederate lines affecting loyal cit-

izens outside were not all unlawful was decided in *United States* v. *Quigley*, 103 U. S. 595. To make a case for removal the answer should have set forth the facts which rendered the mortgage void under the non-intercourse act and the procla-mation thereunder. There has been no attempt to do this.

The order remanding the case is

*Affirmed.*

MR. JUSTICE BLATCHFORD took no part in the decision of this case.